**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

KIMBERLY A. KANE
               Plaintiff,

vs.                                    CASE NO: 2:07-cv-463-JES-SPC

MICHAEL J. ASTRUE,
Commissioner of Social Security,

               Defendant.
_____

## REPORT AND RECOMMENDATION[1]

_____This matter comes before the Court on the Plaintiff, Kimberly A. Kane's Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. #1) filed on July 24, 2007.   The Plaintiff filed her Memorandum of Law in Support of the Complaint (Doc. #16) on March 24, 2008. The Commissioner filed a Memorandum of Law in Support of the Commissioner's Decision (Doc. #17) on April 22, 2008.  Thus, the Motion is now ripe for review.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

## FACTS

### *Procedural History*

On April 2, 2003, the Plaintiff filed an application for a period of disability and disability

_____

[1]This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 28 U.S.C. § 405(g).

1

insurance benefits alleging an onset disability date of February 11, 2002. (Tr. 12).  The Plaintiff's claim was denied initially on October 6, 2003.  (Tr. 24-27).  The claim was also denied upon reconsideration on February 2, 2004.  (Tr. 29-30).  The Plaintiff filed a written request for hearing on March 22, 2004.  (Tr. 32).  A hearing was held on July 1, 2005, before the Honorable Dolores McNerney, Administrative Law Judge, in Fort Myers, Florida.  An unfavorable decision was issued on July 24, 2006. (Tr. 12-21).  The Plaintiff timely filed a Request for Review of Hearing.  (Tr. 9). The Appeals Council denied the Plaintiff's request for review on June 7, 2007. (Tr. 3-5).  Therefore, the decision of the Commissioner became final.   Having exhausted all administrative remedies, the Plaintiff timely filed a Complaint with this Court.

### Plaintiff's History

The Plaintiff was born on September 8, 1960.  (Tr.  44).  The Plaintiff was forty-four (44) years old at the time of the hearing.  The Plaintiff alleges an onset disability date of February 11, 2002, due to lumbar pain, cervical pain, shoulder pain, chronic pain, hip pain, insomnia, anxiety, and asthma.  (Pl. Brief, pp.2).  The Plaintiff has a prior relevant work history as an extruder operator[2]. (Tr. 14).

### Medical and Psychological History

From July 26, 1994, through December 10, 2003, the Plaintiff was treated by Janet Polito, D.O. of Oak Tree Family Practice, P.A. (Tr. 163-260, 423-424). On January 23, 2001, the Plaintiff complained of severe muscle spasms. (Tr. 202).   Dr. Polito noted that the spasm was visible and the area was very tender.  (Tr. 202).  Dr. Polito diagnosed the Plaintiff with left cervical and shoulder

---

[2]An extruder is defined as a pressing machine for making clay coils.  These may be made also by fitting an extruder on to a pug-mill.  www.dictionary.oed.com, accessed June 19, 2008.

pain/strain.   (Tr. 202).   Dr. Polito prescribed Medrol Dosepak and OxyContin.   (Tr. 202).   The Plaintiff was also directed to use ice for twenty (20) minutes as needed.  (Tr. 202).  Based upon the level of improvement, an MRI of the neck would be ordered.  (Tr. 202).

On January 30, 2001, the Plaintiff presented to Dr. Polito for a re-check on the Plaintiff's left-sided neck pain.  (Tr. 200).  The Plaintiff was scheduled to undergo massage treatment. (Tr. 200).  The Plaintiff reported that the massage therapy helped about 80% and further reported physical therapy was helping.  (Tr. 200).

On March 28, 2001, the Plaintiff returned to Dr. Polito.  (Tr. 193).  Dr. Polito noted the Plaintiff had limited range of motion in both directions, with the right side being worse than the left.  (Tr. 192).  The Plaintiff reported anxiety.  Dr. Polito diagnosed the Plaintiff with left cervical pain and trapezius pain and wanted to get the Plaintiff off Oxycontin. (Tr. 192).  The Plaintiff was directed to start Klonopin and Inderol.  (Tr. 192).   The Plaintiff was given trigger point injections at two sites over the left upper trapezius.  (Tr. 192).

On April 18, 2001,  Dr. Polito noted the Plaintiff's neck continued to have swelling and some tender points especially over the left rhomboids, trapezius, and posterior occipital. (Tr. 189). Dr. Polito explained that the pain may be chronic, however, Dr. Polito did not want her to continue medication. (Tr. 189).  Dr. Polito suggested hot baths and massage.  (Tr. 189).

On July 11,2001, the Plaintiff presented to Dr. Polito for a follow-up on her complaints of pain and insomnia.  (Tr. 184).  The Plaintiff reported aggravating her neck by doing something at work and pushing  something very heavy.  (Tr. 184).  Dr. Polito noted the Plaintiff had limited range of motion in the neck and had moderate-severe tenderness all throughout the posterior cervical, down the trapezius and scapular region.  (Tr. 184).  Dr. Polito diagnosed the Plaintiff with left-sided neck

pain and insomnia. (Tr. 184). The Plaintiff was directed to use certain pain medications sparingly. (Tr. 184).

On August 10, 2001, the Plaintiff presented to Dr. Polito.  He noted the Plaintiff was involved in a severe motor vehicle accident and was having increased low back pain and hip pain.  (Tr. 182). Dr. Polito worried that the Plaintiff was starting to develop arthritis.  (Tr. 182).  The Plaintiff had limited range of motion of her neck to about 30 degrees, moderate-severe spasms of posterior occipital and trapezius bilaterally, tenderness all throughout; and complained of pain in the low back area and "across over her hips."  (Tr. 182).  There were no x-rays performed and no manipulation was done.  (Tr. 182).  Dr. Polito diagnosed the Plaintiff with moderate-severe right and left-sided neck pain, lumbar pain, and hip pain. Dr. Polito ordered two MRI's to be completed and prescribed Neurontin and Percocet. (Tr. 182).  The Plaintiff was advised to rest and undergo more massage. (Tr. 182).

On August 24, 2001, the Plaintiff followed up with Dr. Polito.  (Tr. 180).  The Plaintiff was tolerating an increased dose of Neurontin.  (Tr. 180).  Dr. Polito noted the Plaintiff would have an MRI and see a neurologist, which did not require a follow-up for a few months. (Tr. 180).

On August 29, 2001, the Plaintiff presented to  Dr. Polito complaining she strained her back and was having severe spasms in her lumbar spine.  (Tr. 179).  Dr. Polito noted the Plaintiff limped and had difficulty walking due to muscle spasms.  (Tr. 179).  The Plaintiff recently underwent an MRI of the cervical area and lumbar spine.  (Tr. 179).  The Plaintiff was scheduled to visit a neurologist. (Tr. 179).  Dr. Polito diagnosed the Plaintiff with severe lumbar spasms and ongoing cervical pain. (Tr. 179).  Dr. Polito prescribed Oxycontin, Vioxx, and Skelaxin. (Tr. 179).  The Plaintiff was scheduled to visit an acupuncturist and was advised to call after her neurologist visit.  (Tr. 179).

4

On July 17, 2002, the Plaintiff presented to Dr. Polito to be re-checked. (Tr. 172). Dr. Polito noted the Plaintiff continued to smoke two packs of cigarettes per day and suspected she was drinking more, which may have led to the abnormal test results. (Tr. 172). The Plaintiff was given medication for wheezing and advised to cut down on smoking. (Tr. 172).

On March 24, 2003, the Plaintiff returned to Dr. Polito and complained of insomnia and a strained back. (Tr. 170). Dr. Polito diagnosed Plaintiff with lumbar pain strain, chronic pain, anxiety, and asthma with wheezing. (Tr. 170). The Plaintiff was prescribed Klonopin for anxiety and advised to return in three weeks. (Tr. 170).

On May 12, 2003, the Plaintiff returned to Dr. Polito to follow up for multiple problems. (Tr. 168). Dr. Polito noted the Plaintiff suffered from lumbar pain, insomnia, asthma and tobacco addiction. (Tr. 168). The Plaintiff stated she was not able to quit smoking. (Tr. 168). Dr. Polito noted the Plaintiff's spirometry results revealed some obstruction consistent with chronic obstructive pulmonary disease (COPD) and asthma. (Tr. 168). The Plaintiff was diagnosed with lumbar pain, anxiety, asthma, insomnia, and probable COPD. (Tr. 168). The Plaintiff was again advised to quit smoking. (Tr. 168).

On July 7, 2003, the Plaintiff was referred to Harold W. Lettner, Ph.D., PA., a psychologist, who performed an evaluation. (Tr. 126-128). The evaluation consisted of a clinical interview with mental status evaluation and a Beck Depression Inventory (BDI). (Tr. 126). Dr. Lettner noted that the Plaintiff worked in factories her entire life, but on June 4, 2003, she was "let go due to her disabilities". Dr. Lettner noted the Plaintiff was upset about this because she had worked her way up to supervisor. (Tr. 126-127). Dr. Lettner noted that in January 2001, the Plaintiff's brother died and while in Boston for the funeral, she slipped on ice and injured her neck, causing her to be out

of work for nine weeks. (Tr. 127). In July of 2001, the Plaintiff injured her back at work. (Tr. 127). The Plaintiff underwent MRI's, physical therapy and took pain medication. (Tr. 127). The Plaintiff's medication at the time included Oxycontin, Neurontin, Klouopin, Restoril, Advair inhaler, and Albuterol for nebulizer (Tr. 127). Dr. Lettner noted there were no medical records for review. (Tr. 127). Dr. Lettner noted the Plaintiff was in apparent pain and held her neck in a stiff position. (Tr. 127). The Plaintiff's thought processes were logical and coherent. (Tr. 127). There were no signs of thought disorder or other psychotic symptoms. (Tr. 127). Attention and concentration skills were reduced, most likely due to the medication. (Tr. 127). On the Beck Depression Inventory (BDI)[3], Plaintiff scored a 15, which indicated the presence of mild depression and endorsed some items indicating some feelings of sadness, some discouragement about the future, a sense of personal failure, reduced pleasure in life, self-disappointment, irritability, some apathy, intermittent severe sleep disturbance, weight loss, intense somatic preoccupation, and reduced sex drive. (Tr. 127-128). The Plaintiff denied any suicidal ideas. (Tr. 128). Dr. Lettner opined the Plaintiff showed a presence of adjustment difficulties in response to her health problems. (Tr. 128). The Plaintiff's emotional status was not in and of itself of sufficient intensity to stop her from working. (Tr. 128). The Plaintiff's diagnosis was 309.28, adjustment reaction with mixed emotional features and physical problems including chronic pain. (Tr. 128).

From October 4, 2001, through March 16 , 2004, the Plaintiff was treated by Michael Havig, M.D., an orthopedist of Suncoast Rehabilitation Center (Suncoast). (Tr. 270-283, 319-328). On October 4, 2001, the Plaintiff presented with a chief complaint of bilateral hip pain. (Tr. 280). Dr.

---

[3]The Beck Depression Inventory (BDI) is defined as a 21-question multiple choice self report inventory that is one of the most widely used instruments for measuring the severity of depression. Http://en.wikipedia.org/wiki/Beck_Depression_Inventory Accessed June 19, 2008.

Havig noted a previous MRI performed by Dr. F. Desmond Hussey that revealed a herniated lumbar disc. (Tr. 280). Dr. Havig noted that lumbar flexion/extension elicited mild to moderate low back pain. (Tr. 280). Examination revealed moderate paraspinal discomfort to palpation and percussion. (Tr. 280). Motor strength was 5/5. (Tr. 280). Dr. Havig diagnosed the Plaintiff with greater trochanteric bursitis and low back pain with possible radiculpathy. (Tr. 280-281).

On February 7, 2002, the Plaintiff presented to Dr. Havig for re-evaluation for her back pain. (Tr. 278). Dr. Havig reported treatment by Dr. Hussey. (Tr. 278). The Plaintiff reported increased right-sided lower back pain which has progressively worsened over a few days. (Tr. 278). The Plaintiff stated the pain radiated down the buttock into the groin and also into the lateral hip. (Tr. 278). The Plaintiff further stated it was exacerbated with activity. (Tr. 278). Dr. Havig diagnosed the Plaintiff with back pain and greater trochanteric bursitis. (Tr. 278). The Plaintiff was to be evaluated by Dr. Hussey and was referred for an MRI with Dr. Hussey. (Tr. 278).

On August 23, 2003, David Grippe, M.D., reviewed the Plaintiff's medical records from February 11, 2002, at the request of the Social Security Administration and completed a Psychiatric Review Technique Form. (Tr. 141-154). Dr. Grippe indicated that medical impairments were not severe and the Plaintiff has co-existing non-mental impairment(s) that requires a referral to another medical speciality. (Tr. 141). Dr. Grippe noted the existence of adjustment disorder with mixed emotional features. (Tr. 144). Dr. Grippe indicated that the Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. (Tr. 151). Dr. Grippe concluded that, considering the Plaintiff's education, previous work history, objective findings and related mental evaluation, the Plaintiff's identified mental impairment was not of such nature as to prevent the Plaintiff from effectively

carrying out work functions on a full-time basis.  (Tr. 153).

On October 3, 2003,  Jo Ann Yurisic, SDM, reviewed the Plaintiff's medical records at the request of the Social Security Administration and completed a Physical Residual Functional Capacity Assessment.  (Tr. 155-162).  Ms. Yurisic opined the Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds.  (Tr. 156).  Ms. Yurisic indicated the Plaintiff could stand and/or walk 6 hours in an 8 hour workday.  (Tr. 156).  The Plaintiff could sit for about 6 hours in an 8-hour workday.  (Tr. 156).   The Plaintiff could occasionally perform climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling and never perform climbing ladder/rope/scaffolds.  (Tr. 157).  Ms. Yurisic indicated that the Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gasses, and poor ventilation and avoid even moderate exposure to hazards (machinery, heights, etc.). (Tr. 159). Ms. Yurisic noted the Plaintiff's level of pain seemed to be exaggerated. (Tr. 156, 160).

On  November 10, 2003, an MRI was performed on the Plaintiff's right shoulder.   The MRI revealed moderate supraspinatus tenditinis/tendinopathy/contusion and mild subarcromial/subdeltoid bursitis and impingement by the AC joint.  (Tr. 1389).  Further,  bone contusion posterior lateral humeral head was found, torn anterior labrum, as well as possible superior labral anteposterior (SLAP) type lesion of insertion of long head of biceps tendon into superior labrum. (Tr. 389).

On December 9, 2003, the Plaintiff returned to Dr. Havig for a follow up.  (Tr. 276).  The Plaintiff reported her hip was doing "okay".  (Tr. 276).  The chief complaint was  right shoulder pain primarily in the anterolateral aspect of the shoulder and radiates down the arm towards the elbow. (Tr. 276).  Examination revealed some tenderness over the proximal humerus and rotator cuff.  (Tr. 276).  The Plaintiff showed positive impingement signs. (Tr. 276).  Dr. Havig  diagnosed the Plaintiff

8

with labral tear of the right shoulder and rotator cuff tendinopathy of the right shoulder. (Tr. 276). The Plaintiff received a corticosteroid injection but was told that if she experienced pain that arthroscopy would be considered.  (Tr. 276).

On December 31, 2003, Dr. Havig performed an arthroscopic repair of the anterior labrum with capsular shift, arthroscopic repair superior labral tear (type 11 SLAP), arthroscopic subacromial decompression, and inserted pain control catheter. (Tr. 270-272).  The Plaintiff tolerated the procedure well and experienced no complications.  (Tr. 273).

On January 2, 2004, the Plaintiff presented to Dr. Havig.  (Tr. 323-324).  The Plaintiff was complaining of pain and even went to the emergency room.  (Tr. 323).  The Plaintiff received a narcotic pain medicine injection at the ER, which she advised helped a bit.  (Tr. 323).  Dr. Havig examined the Plaintiff for complaints of right shoulder pain and trouble sleeping.  (Tr. 323).  Dr. Havig noted the Plaintiff was on chronic narcotic pain medication for back problems and was being treated by Dr. Hussey.  (Tr. 323).  The Plaintiff received a Toradol injection and her prescriptions were refilled for Percocet and Valium. (Tr. 323-324).

On January 14, 2004, a Residual Functional Capacity Assessment was completed by a State Agency physician who reviewed the Plaintiff's medical records. (Tr. 297-304).  The Physician opined the Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. (Tr. 208).  The Plaintiff could stand and/or walk and sit for 6 hours in an 8-hour workday. (Tr. 208). The Plaintiff was found to have bulging or protruding discs.  (Tr. 298).  There was no objective evidence of severe motor sensory or neurodeficits.  (Tr. 298).

On  January 30, 2004,  Michael R. Stevens, Ph.D., a psychologist, reviewed the Plaintiff's medical records and completed a Psychiatric Review Technique Form at the request of Social

Security. (Tr. 305-318).  Dr. Stevens indicated the Plaintiff's medically determinable impairment was adjustment disorder with mixed features. (Tr. 308).  Dr. Stevens found the Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. (Tr. 315).  Dr. Stevens noted the Plaintiff did not have significant psychiatric dysfunction.  (Tr. 317).

From May 14, 2004,  through September 24, 2004, the Plaintiff was treated by Yovanni Tineo, D.O., with complaints of abdominal pain.  (Tr. 398-422, 425-430).  Dr. Tineo noted the Plaintiff had joint pain, radiating pain, cervical spasms, and reduced range of motion.   Dr. Tineo diagnosed the Plaintiff with chronic neck pain.  (Tr. 426)..

On May 17, 2004, the Plaintiff had a CT scan of the abdomen and pelvis with contrast performed by Pamela Caslowitz, M.D.   The CT scan of the abdomen revealed a possible left inguinal hernia but was otherwise unremarkable. (Tr. 399).

From August 27, 2001, through June 9, 2005, the Plaintiff was treated by F. Desmond Hussey, M.D., a neurologist. (Tr. 329-381). On August 27, 2001, Dr. Hussey examined an MRI that was performed upon the recommendation of Dr. Polito.  (Tr. 381).  The MRI depicted  the cervical spine and diagnosed the Plaintiff with C5-6 left paracentral disc protrusion causing foraminal narrowing on the left, C3-4 and 01-5 minimal posterior annular bulge without compromise of central canal or foramina.  (Tr. 381).  Dr. Hussey examined an MRI of the lumbar spine and diagnosed Plaintiff with L3-4 broad-based posterior disc bulge effacing the ventral thecal sac, does not compromise central or foramina, and L4-5 broad-based annular bulge without compromise of central canal or foramina. (Tr. 379-380).

On August 31, 2001, Dr. Hussey corresponded by letter with Dr. Polito informing her of the

10

results of the neurological evaluation.  (Tr. 375-377).  Dr. Hussey noted the Plaintiff complained of back pain that  fluctuated from side to side causing stabbing pain into the buttocks, sometimes so severe that it will make her legs give way. (Tr. 375).  Secondly, the Plaintiff also complained of cervical pain that is a deep aching discomfort, and she is a little bit depressed.  (Tr. 375).  The Plaintiff was noted to smoke a pack of cigarettes daily.  (Tr. 376).   Dr. Hussey's impression was mechanical lumbosacral pain and cervical mechanical and myofascial pain. (Tr. 377).  Dr. Hussey was concerned about the amount of Perocet the Plaintiff was taking and her liver toxicity.  (Tr. 377).  Dr. Hussey continued physical therapy and the medication and told the Plaintiff to return in four weeks.  (Tr. 377).

On January 17, 2005, the Plaintiff was seen  by  Dr. Hussey for a neurological follow  up.  (Tr. 331).  Dr. Hussey noted difficulties with the Plaintiff's insurance.  (Tr. 331).  In addition, the Plaintiff could not afford her medication. (Tr. 331).   Dr. Hussey concluded the Plaintiff was obviously depressed, had chronic mechanical pain, probably discogenic in origin with some myofascial pain cervically and possible arthritis. (Tr. 331).  Dr. Hussey gave the Plaintiff free samples of Effexor and was going to switch her over to methadone.  (Tr. 331).  The Plaintiff was advised to follow up in three months.  (Tr. 331).

On February 21, 2005, Dr. Hussey gave the Plaintiff work limits due to mechanical pain and cervical pain.  Dr. Hussey opined the Plaintiff was unable to lift greater than 10 pounds occasionally, could not sit or stand for a period of greater than 30 minutes at a time, and could not do any repetitive lifting or squatting. (Tr. 330).

On June 9, 2005,  Dr. Hussey completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical).  (Tr. 458-459).  Dr. Hussey indicated the Plaintiff's lifting and

carrying was affected by the impairment. (Tr. 458). The Plaintiff could occasionally and frequently lift or carry less than 10 pounds. (Tr. 458). Dr. Hussey indicated that the Plaintiff was capable of standing and/or walking for less than 2 hours in an 8 hour workday. (Tr. 458). The Plaintiff was capable of sitting for 1 hour in an 8 hour workday. (Tr. 459). Dr. Hussey indicated that pushing and/or pulling was affected by the impairment and was limited to the upper and lower extremities. (Tr. 459). Dr. Hussey stated that due to the Plaintiff's neuropathy, she could not kneel, crouch, or stoop repetitively and never crawl. (Tr. 459). The Plaintiff was frequently limited by manipulative limitations. (Tr. 460).

*Administrative Law Judge's Decision*

Upon consideration of the record, the ALJ found the Plaintiff met the insured status requirements of the Social Security Act through December 31, 2007. (Tr. 14). The ALJ also found the Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. (Tr. 14). The ALJ found the Plaintiff to have chronic neck and back pain and asthma as severe impairments. (Tr. 14). However, the ALJ found the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15). After careful consideration of the record, the ALJ found the Plaintiff has the residual functional capacity to perform light level work to a significant degree consisting of lifting and/or carrying twenty (20) pounds occasionally and ten (10) pounds frequently, standing and/or walking six (6) out of eight hours, sitting six (6) hours with the opportunity to alternate position (but not in an unusual fashion) and occasional climbing, balancing, kneeling, stooping, crouching, or crawling. (Tr. 17). The Plaintiff was also to avoid concentrated exposure to dust, fumes, odors, gases, and poor ventilation. (Tr. 17). The ALJ found the Plaintiff was unable

to perform her past relevant work.  (Tr. 20).  The ALJ determined the Plaintiff was forty-one (41)

years old on the alleged onset disability date, which is considered a "younger individual", pursuant

to 20 C.F.R. 404.1563.  (Tr. 20).  At the time of the decision, the Plaintiff was forty-five (45) years

of age.  (Tr. 20).  The Plaintiff has a high school education with additional vocational training as an

automobile mechanic.   (Tr. 20).   The ALJ, in considering the vocational expert's testimony,

concluded the skills acquired during the course of the Plaintiff's work experience were not

transferable.  (Tr. 20).  Therefore, considering the Plaintiff's age, education, work experience, and

residual functional capacity, there are jobs that exist in significant numbers in the national economy

that the Plaintiff can perform.  (Tr. 20).  Therefore, the Plaintiff was found to not be under a

"disability" as defined in the Social Security Act from February 11, 2002, through the date of the

decision.

## THE STANDARD OF REVIEW

### A.  Affirmance

The scope of this Court's review is limited to determining whether the ALJ applied the correct

legal standards,   and whether the findings are supported by substantial evidence.  Hibbard v.

Commissioner, WL 4365647 *2 (M.D. Fla. December 12, 2007) (citing Richardson v. Perales, 402

U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080

(11th Cir. 1988)).  In evaluating whether a claimant is disabled, the ALJ must follow the sequential

inquiry described in the regulations[4].  20 C.F.R. §§ 404.1520(a), 404.920(a).  The Commissioner's

---

[4]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or
mandate a finding of disability.  The steps are as follows:
   *Step 1.*  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in
such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.
   *Step 2.*  Does the claimant suffer from a severe impairment?  If not, then the claimant is not

findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence is more than a scintilla-*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion."  Hibbard, WL 4365647 *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Phillips v. Barnhart, 357 F. 3d 1232, 1240 n. 8 (11th Cir. 2004).  The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court  "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]."Phillips, 357 F. 3d at 1240 n. 8; Dyer v. Barnhart, 357 F. 3d 1206, 1210 (11th Cir. 2005).  If the Commissioner's decision is supported by substantial evidence, it should

---

disabled.  If there is a severe impairment, the ALJ moves on to step three.

*Step 3*.  Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, then the claimant is disabled.  If not, the next question must be resolved.

*Step 4*.  Can the claimant perform his or her former work?  If the claimant can perform his or her past relevant work, he or she is not disabled.  If not, the ALJ must answer the last question.

*Step 5*.  Can he or she engage in other work of the sort found in the national economy?  If so, then the claimant is not disabled.  If the claimant cannot engage in other work, then he or she is disabled.  See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

### B. Reversal and Remand

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. Williams v. Commissioner, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla. 2005) (citing Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. Thomas v. Barnhart, WL 3366150 *3 (11th Cir. December 7, 2004) (citing Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993)). The district court may also remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences. Johnson v. Barnhart, 268 F. Supp. 2d 1317, 1321 (M.D. Fla. 2002) (citing Jackson v. Chater, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996)).

"To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim." Johnson, 268 F. Supp. 2d at 1321; Jackson, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); Davis, 985 F.2d at 534 (remand to the Secretary is warranted where the ALJ

has failed to apply the correct legal standards).  "Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision." Johnson, 268 F. Supp. 2d at 1321 (citing Falcon v. Heckler, 732 F.2d 827, 830 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain the his basis of his decision)).

On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Johnson, 268 F. Supp. 2d at 1321;  See Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983)(finding the Court may at any time order additional evidence to be taken before the Secretary upon a showing that there is new evidence which is material and that there was good cause for the failure to incorporate such evidence into the record during a prior proceeding); See Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (remanding on the grounds that it is reversible error for the ALJ not to order a consultative examination when warranted).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. Jackson, 99 F.3d at1095; Johnson, 268 F. Supp. 2d at 1321.

In contrast, a sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. Sentence six of § 405 (g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405 (g) (sentence six).  "To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative

so that there is a reasonable possibility that it would change the administrative result; and 3.) there

is good cause for failure to submit the evidence at the administrative level." Green v Commissioner,

2007 WL 4287528 * 3 (M.D. Fla. Dec. 4, 2007) (citing Jackson, 99 F.3d at 1090 - 1092; *See also*

Keeton v. Dept. of Health and Human Serv., 21 F.3d 1064, 1068 (11th Cir. 1994)). With a sentence-

six remand, the parties must return to the district court after remand to file modified findings of fact.

Jackson, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter

a final judgment until after the completion of remand proceedings.[5] Id.

## THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the

claimant unable to do his or her previous work, or any other substantial gainful activity which exists

in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§404.1505 - 404.1511.

## DISCUSSION

### *Whether the ALJ Afforded the Appropriate Weight to the Plaintiff's Treating Physician*

The Plaintiff argues the ALJ erred in her decision by not affording the proper weight to

the opinions of the Plaintiff's treating Neurologist, Dr. J. Desmond Hussey.   The Defendant

argues the ALJ's decision is supported by substantial medical evidence and was properly

---

[5]The time for filing an application for attorneys fees under the Equal Access to Justice Act,
28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. Jackson, 99
F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must
be filed after the entry of judgment before the district court loses jurisdiction. Id. In a sentence-six
remand, the time runs from the post-remand entry-of-judgment date in the district court. Id.

articulated in her written opinion.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. 20 C.F.R. § 404.1527 (d); Lewis, 125 F.3d at 1439 - 1441; Sabo v. Commissioner of Social Security, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527 (d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory. Edwards v. Sullivan, 937 F.2d 580,  (11th Cir. 1991) (ALJ properly discounted treating Physician's report where the physician was unsure of the accuracy of his findings and statements); Morrison v. Barnhart, 278 F. Supp. 1331, 1334 (M.D. Fla. 2003).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. 20 C.F.R. § 404.1527 (d)(2); Wilson v. Heckler, 734 F.2d 513, 518

(11th Cir.1984). Furthermore, should the ALJ discount the treating physician's opinion he must clearly articulate the reasons for giving less weight to the opinion, and failure to do so is reversible error. <u>Morrison</u>, 278 F. Supp. at1334.

The ALJ is required to review all of the medical findings and other evidence that supports a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527 (e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner. 20 C.F.R. § 404.1527(e).

Here, the Plaintiff contends the decision of the ALJ is not supported by substantial evidence because the opinion of treating physician, Dr. Hussey, regarding the Plaintiff's ability to perform work-related activities was not afforded proper weight.   The Plaintiff treated with Dr. Hussey from 2001 to 2005 for pain management. (Tr. 16).  On June 9, 2005, Dr. Hussey completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form.  (Tr. 458-461).  Dr. Hussey opined the Plaintiff was capable of lifting or carrying less than ten (10) pounds frequently or occasionally, standing and/or walking for less than two (2) hours in an eight (8) hour day, could sit for about six (6) hours in an eight (8) hour workday, and had limited pushing or pulling capability in the upper and lower extremities as a result of neuropathy and chronic neck/back pain. (Tr. 459).  He further opined that the Plaintiff was only occasionally able to climb, balance, kneel, crouch, or stoop. (Tr. 459).  The Plaintiff was never capable of crawling.  (Tr. 459). Dr. Hussey wrote that due to

neuropathy, the Plaintiff could not kneel, crouch, or stoop repetitively and never crawl.  (Tr. 459).

The Plaintiff was found to have an unlimited ability for reaching, handling, fingering, and feeling and

could not be exposed to fumes, odors, chemicals, or gases.  (Tr. 460-461).

The ALJ did not fully credit Dr. Hussey's opinions because they were not supported by the

record as a whole.  (Tr. 19).   In her decision , the ALJ extensively discusses the opinion of Dr.

Hussey and discounts the opinion for several reasons.  Initially, the ALJ points out that in February

21, 2005, Dr. Hussey opined the Plainitff's back and neck pain continued to be disabling and

restricted her from lifting up to ten (10) pounds occasionally, to standing or sitting thirty (30) minutes

at one time, and  performing no repetitive lifting or squatting.  (Tr.  330).  However, in contrast, in

June 2005, Dr. Hussey revised his opinion and found the Plaintiff was capable of lifting/carrying less

than ten (10) pounds, stand and walk less than two (2) hours, sit one (1) hour, and that she was

limited in pushing and pulling with her extremities.  (Tr. 19).  Further, Dr. Hussey found the Plaintiff

had no limitations regarding manipulation and was capable of reaching, handling, fingering and feeling

frequently.  (Tr. 19, 458-461).  Dr. Hussey completed another report, however, it was not dated and

the ALJ could not discern what time period it referred to. (Tr. 19, 345-346).  Therefore, the ALJ

gave little weight to Dr. Hussey's opinion.  (Tr. 19).

The ALJ referred to an examination performed at the request of the State Agency by Dr.

Stephen Brady, DO, on August 13, 2003.[6]  SSR 96-6 requires the ALJ to not only consider the

program physicians opinions because these physicians are considered experts, but the ALJ must also

---

[6]This evaluation report is dated August 13, 2003, and refers to the
Plaintiff's complaint of a work related injury occurring in July, 2001. In the
decision, the ALJ referred to the examination as being performed by the State
Agency "in July, 2001".  This appears to be an inadvertent scrivener's error and
is deemed harmless.

state, in his decision, the weight he has given to those opinions. *See* Wainwright, 2007 WL 708971 at *2; Goberman, 2001 WL 267209.  T

> The ALJ states:

> The undersigned carefully considered Dr. Hussey's other opinions, but finds that on close examination of the evidence as a whole that the claimant is able to do a range of light level work.  Stephen Brady, DO, the physician who examined the claimant for the State Agency in July 2001, found she had no focal neurological deficits, a full range of motion of the neck, and full motor strength.  He also indicated that the claimant had "a bizarre and melodramatic gait that does not stay the same at various time with observation and becomes much improved when she is unaware of observation."  Further, Dr. Brady stated, "I think her perception of her level of pain and her perception of her degree of disability are extremely exaggerated...At this point though, I cannot find anything on physical examination that makes me believe that she is disabled." (Exhibit 2F/2). The record shows that she ambulated without difficulty; she has full motor strength, and intact neurological examinations.  (Tr. 19).

Dr. Brady stated the Plaintiff presented for Disability Evaluation and that she was hurt at work on July 31, 2001.  (Tr. 129).  As the ALJ notes, Dr. Brady opined the Plaintiff had no focal neurological deficits, full range of motion of the neck, and full motor strength.  (Tr. 19, 130).  The ALJ also noted that is was Dr. Brady's opinion the Plaintiff exaggerated her symptoms and could not find anything upon examination that would support a finding of disability. (Tr. 19, 130).  Further, the record showed the Plaintiff could ambulate without difficulty, she had full motor strength and intact neurological examinations.  (Tr. 19).    Clearly, Dr. Brady's opinion contradicts Dr. Hussey's assessment and it was appropriate for the ALJ to carefully consider the opinion.

The ALJ further states that Dr. Hussey's records showed the Plaintiff was benefitting from treatment.  (Tr. 19).   The ALJ noted although Dr. Hussey maintained the Plaintiff has mechanical pain, objective medical evidence showed minor degenerative changes which does not support the levels of pain alleged. (Tr. 19).  As noted above, the state agency physician, Dr. Brady, was skeptical

of the Plaintiff's pain allegations and found the Plaintiff's "perception of her degree of disability are extremely exaggerated." (Tr. 19, 130).   Furthermore, no other physician found the Plaintiff so limited during the adjudicatory period. (Tr. 19).

Lastly, the ALJ specifically stated the evidence was carefully considered, including that of Dr. Hussey, other physicians of record, and the claimant's testimony.   Based upon these considerations, the Plaintiff was found to be capable of performing a range of light level work with reasonable accommodations for her limitations. (Tr. 19).

Clearly, the ALJ articulated her rationale as to why she did not fully credit Dr. Hussey's opinion.   The ALJ supported her rejection of Dr. Hussey's opinion with substantial evidence and where the Commissioner's decision is supported by substantial evidence, the District Court will affirm.  Edwards, 937 F.2d at 585 n.3. _____

Accordingly it is hereby

**RESPECTFULLY RECOMMENDED:**

The Decision of the Commissioner should be **AFFIRMED.**

**Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.**

**DONE AND ORDERED** at Fort Myers, Florida, this   20th   day of June, 2008.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:  Counsel of record